BRIAN P. CONNOLLY'S CASE.

Suffolk. September 12, 1994. - November 16, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, & LYNCH, JJ.

*Workers' Compensation Act*, Discontinuance of payments, Incarcerated employee. *Statute*, Amendment, Retroactive application.

General Laws c. 152, § 8 (2) (*j*), as amended through St. 1991, c. 398, § 23, providing that an insurer may terminate workers' compensation benefits during any period the employee is incarcerated, was applicable to all pending claims from its effective date irrespective of the date of injury, where the Legislature expressed a clear intent that § 8 (2) (*j*) apply retroactively. [850-852]

No constitutional issues were raised by the retroactive application of G. L. c. 152, § 8 (2) (*j*), to terminate the workers' compensation benefits of an employee during a period he was incarcerated, where the employee, while incarcerated, had no earning capacity and thus had no right to be compensated under G. L. c. 152. [852-854]

APPEAL from a decision of the Industrial Accident Reviewing Board.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Thomas M. Elcock* for the insurer.

*William J. Gately, Jr.,* for the employee.

ABRAMS, J. CNA Insurance Companies (insurer) appeals from a decision of a reviewing board of the Department of Industrial Accidents reversing a decision of an administrative judge denying workers' compensation from the effective date of G. L. c. 152, § 8 (2) (*j*) (1992 ed.). That section permits an insurer to terminate an employee's benefits if the employee is incarcerated. In a two-to-one decision, the reviewing board ruled that § 8 (2) (*j*) could "be applied only to claims based on injuries occurring after the effective date." The insurer appealed to the Appeals Court. We transferred

the case from the Appeals Court on our own motion and now reverse the decision of the reviewing board.

I. *Facts.* The parties do not contest the facts. In December, 1987, Brian P. Connolly fell and injured his back while working for Wire & Metal Separation Systems. Connolly began receiving weekly compensation benefits for temporary total incapacity from the insurer. In 1990, Connolly was convicted of a felony and incarcerated; as a result, on April 1, 1990, the insurer discontinued his weekly compensation benefits. Connolly then sought relief from the administrative judge who, on September 19, 1991, ordered the insurer to pay Connolly's compensation benefits for the period from April 1, 1990, onward and assessed a twenty per cent penalty on the insurer for the discontinuance of the payments. An administrative hearing was scheduled for January 24, 1992.

In the interim, on December 23, 1991, the Legislature enacted amendments to the workers' compensation statute. St. 1991, c. 398. The amendments were effective immediately on December 24, 1991, by emergency preamble. As amended through St. 1991, c. 398, § 23 (codified at G. L. c. 152, § 8, and hereinafter referred to as § 8 [2] [*j*] or § 8), the statute provides that an insurer may terminate benefits when an employee is incarcerated: "(2) An insurer paying weekly compensation benefits shall not modify or discontinue such payments except in the following situations: . . . (*j*) the employee has been incarcerated pursuant to conviction for a felony or misdemeanor and has thereby forfeited any right to compensation during such period."

Relying on this amendment, the insurer again stopped Connolly's weekly benefits payments. At the scheduled January 24, 1992, hearing, the administrative judge applied § 8 (2) (*j*) and ruled first, that Connolly was to receive benefits only up to the effective date of the amendments, and second, that Connolly had no further claim to benefits from the effective date through the duration of his incarceration.

On December 29, 1992, the board reversed the administrative judge's order and ruled that § 8 (2) (*j*) does not ap-

ply to claims arising out of injuries which occurred before the effective date.

II. *Retroactivity.* At issue is whether § 8 (2) (*j*) applies to incarcerated persons who were injured prior to the effective date of § 8 (2) (*j*). Connolly argues that, because he was injured four years prior to the enactment of § 8 (2) (*j*), that section is not applicable to him and his benefits may not be terminated based on his incarceration. We do not agree.

We look first to the plain language of the 1991 amendments to determine whether the Legislature intended § 8 (2) (*j*) to be applied from its effective date onward to incarcerated employees, regardless of the date of injury. General Laws c. 152, § 2A (1992 ed.),[1] provides that sections of the workers' compensation statute which increase or decrease benefits to injured employees are substantive, and applicable only to injuries which occur on or after the effective date, *"unless otherwise expressly provided"* (emphasis supplied). Sections not designated as substantive are by default procedural or remedial and are applicable to all beneficiaries no matter when they were injured *"unless otherwise expressly provided"* (emphasis supplied).

Section 107 of the 1991 amendments provides a more specific designation of procedural and substantive portions of the workers' compensation statute. Under St. 1991, c. 398, § 107: "Except as specifically provided by [§§ 103-106], inclusive, of this act, all sections of this act shall, for purposes of [G. L. c. 152, § 2A], be deemed to be procedural in

---

[1]Section 2A provides in its entirety: "Every act, in amendment of this chapter, in effect on the effective date of this section or thereafter becoming effective which increases or decreases the amount or amounts of compensation payable to an injured employee or his dependents including amounts deducted for legal fees shall, for the purposes of this chapter, be deemed to be substantive in character and shall apply only to personal injuries occurring on and after the effective date of such act, unless otherwise expressly provided. Every act, in amendment of this chapter, in effect on the effective date of this section or thereafter becoming effective which is not deemed to be substantive in character within the meaning of this section shall be deemed to be procedural or remedial only, in character, and shall have application to personal injuries irrespective of the date of their occurrence, unless otherwise expressly provided."

character." The Legislature did not designate § 8 (2) (*j*) as a substantive provision in §§ 103-106. Therefore, the plain language of § 107 indicates that the Legislature intended § 8 (2) (*j*) to be a procedural provision.[2] As a procedural provision, § 8 has "application to personal injuries irrespective of the date of their occurrence." G. L. c. 152, § 2A.

Connolly argues that the Legislature did not specifically state that § 8 (2) (*j*) was applicable to all pending claims from its effective date irrespective of the date of injury. Therefore, he concludes that the common law rule that a statute affecting substantive rights operates prospectively only applies to his case. We do not agree. That rule applies only if the legislative intent is unclear. *Sentry Fed. Sav. Bank* v. *Co-Operative Cent. Bank*, 406 Mass. 412, 414 (1990) ("Unless the legislative intent is unequivocally clear

---

[2]The specific designations of procedural and substantive provisions in St. 1991, c. 398, §§ 103-106, make the intent of the Massachusetts Legislature clear. Where other States' Legislatures have failed to designate whether amendments to their workers' compensation statutes apply to claims based on injuries which predate the amendments' effective dates, courts have reached different results. For example, in *Franks* v. *White Pine Copper Div.*, 422 Mich. 636, 651, 668-669 (1985), the Supreme Court of Michigan applied amendments to the Michigan workers' compensation statute retroactively, although the Michigan Legislature did not indicate that the amendments were to be applied to injuries which occurred prior to their effective dates. The Michigan Legislature then passed legislation specifically stating that the amendments did not apply to claims based on injuries predating the effective date of the amendments. See 1987 Mich. Pub. Acts No. 28. See also *General Motors Corp.* v. *Romein*, 112 S. Ct. 1105, 1108-1109 (1992) (discussing legislative history of these provisions).

In the absence of any expression of legislative intent, two State courts refused to terminate previously injured employees' benefits when the employees were incarcerated. See, e.g., *United Riggers Erectors* v. *Industrial Comm'n of Ariz.*, 131 Ariz. 258, 260-261 (1981) (because Arizona Legislature did not enact any statute expressly prohibiting payment of disability benefits to incarcerated employees, the court held injured employee should still receive benefits because incarceration did not constitute voluntary removal from job market); *State Indus. Ins. Sys.* v. *Campbell*, 109 Nev. 997 (1993) (absent statute suspending workers' compensation benefits to incarcerated employees, court ruled that, because the incarcerated employee had not voluntarily refused to submit to a required examination, his benefits were improperly terminated during his incarceration).

to the contrary, a statute operates prospectively, not retroactively"); *Price* v. *Railway Express Agency, Inc.*, 322 Mass. 476, 483 (1948) ("Statutes dealing with substantive rights are commonly to be construed to deal only with transactions occurring after their enactment unless the legislative intent that they should be applied to past transactions is clearly expressed"); *Hanscom* v. *Malden & Melrose Gas Light Co.*, 220 Mass. 1, 3 (1914). Because the Legislature expressed a clear intent that § 8 (2) (*j*) apply retroactively, the common law rule is inapplicable.

Our result is consistent with other State court decisions interpreting and applying similar amendments to their workers' compensation statutes. *Jones* v. *Department of Corrections*, 185 Mich. App. 65, 67 (1990) (amendment eliminating workers' compensation benefits during periods of incarceration "applies to compensation for injuries . . . which predate the provision's effective date"), citing *Franks* v. *White Pine Copper Div.*, 422 Mich. 636, 668-669 (1985). See generally Annot., Workers' Compensation: Incarceration as Terminating Benefits, 54 A.L.R.4th § 11, at 253 (1987 & Supp. 1993), and cases collected therein.

III. *Constitutionality of retroactive application.* Connolly argues that the termination of his compensation benefits on the effective date of § 8 (2) (*j*) is unconstitutional. We do not agree. Constitutional issues are raised by retroactive application of a statute if the statute deprives an individual of vested rights. If an individual has no vested right, a court need not reach any constitutional issues. *McCarthy* v. *Sheriff of Suffolk County*, 366 Mass. 779, 781 (1975) (analysis of whether the statute, as applied, violates due process is necessary only if retroactive operation of a statute adversely affects vested substantive rights). See also *Franks, supra* at 652-653 (amendment reducing benefits not retroactive simply because of application to injuries predating effective date; although amendment may involve events occurring prior to its effective date, no constitutional problem arises because it applies only to payments received and attributable to periods after its effective date). Connolly argues that because his in-

jury and award of benefits predated § 8 (2) (*j*), if the amendment operates to terminate weekly payments it is an unconstitutional deprivation of a vested property right. There is no merit to that contention.

In workers' compensation cases, an injured employee receives compensation "not for the injury as such but rather for an impairment of earning capacity caused by the injury. An injury to be compensable must be one which lessens the employee's ability to work." *Zeigale's Case*, 325 Mass. 128, 129-130 (1949). An employee who is incarcerated loses his ability to work because of the incarceration, not the injury. Applying § 8 (2) (*j*) to claims based on injuries which arose before the effective date of the amendment thus raises no "constitutional" issue. Employees can recover compensation benefits for loss of earning capacity, but during incarceration the employee may not recover because he or she has no earning capacity.[3]

Several State courts addressing this issue reached similar conclusions. See, e.g., *R.E. Dailey Co. v. Dorman*, 509 So. 2d 377, 378 (Fla. Dist. Ct. App. 1987) (prisoner not entitled to wage-loss benefits because he could not search for work in prison and made no showing that his loss of income was due to work-related accident); *Bilello v. A.J. Eckert Co.*, 43 A.D.2d 192 (N.Y. 1974) (by committing a crime employee removed himself from the labor market and thus was not eligible on conviction for further compensation benefits); *Parker v. Union Camp Corp.*, 108 N.C. App. 85, 88 (1992)

[3]The board expressed a concern that, if § 8 were retroactive, "a previously injured claimant who is released from incarceration and can establish a present loss of earning capacity causally related to his work injury may nevertheless be totally ineligible for weekly benefits if . . . the maximum period of time for which compensation was due . . . elapsed during the period of incarceration." Section 8 (2) (*j*) terminates an employee's eligibility for compensation benefits while he or she is incarcerated. The words of the statute do not expressly address, and the facts of this case do not raise any issue of a released prisoner's eligibility for benefits if the prisoner establishes after release a present loss of earning capacity due to a prior work-related injury. Also, no issue of how the time period should be computed in such circumstances is before us. We therefore do not reach those issues.

(prior to incarceration, employee's incapacity to earn wages was a result of his injury, but while in prison "his incapacity to earn was caused by his imprisonment, not by his injury"); *Baskerville* v. *Saunders Oil Co.*, 1 Va. App. 188, 193 (1985) (payment of benefits for temporary, partial incapacity suspended for duration of twenty-year sentence). See also 1B A. Larson, Workmen's Compensation § 47.31 (g) (1993 & Supp. 1993). See generally Annot., *supra.*

The decision of the reviewing board is reversed.[4]

*So ordered.*

---

[4]Even where there is legislation disallowing benefits when an injured employee is incarcerated, the Ohio Supreme Court held that the provision does not apply to permanently and totally disabled employees. See, e.g., *State ex rel. Brown* v. *Industrial Comm'n of Ohio*, 68 Ohio St. 3d 45, 49 (1993) (permanently and totally disabled employee whose injury predated an amendment's effective date may collect benefits while incarcerated because "it is not the subsequent incarceration which prevents the claimant's return to sustained remunerative employment, it is the disability itself"). Because Connolly was not awarded permanent total disability benefits, we do not reach this issue.