11 P.3d 1006

Guadalupe ARANDA, Petitioner,

v.

The INDUSTRIAL COMMISSION
OF ARIZONA, Respondent,

Classic Roofing, Inc., Respondent
Employer,

State Compensation Fund,
Respondent Carrier.

Remedytemp & Remedyperm,
Petitioner Employer,

State Compensation Fund,
Petitioner Carrier,

v.

The Industrial Commission of
Arizona, Respondent,

Michael Everett, Respondent Employee.

Nos. CV–99–0303–PR, CV–99–0405–T/AP.

Supreme Court of Arizona,
En Banc.

Sept. 12, 2000.

As Corrected on Denial of
Reconsideration Nov. 1, 2000.

Taylor & Associates, PLLC by Roger A. Schwartz, Phoenix, Attorneys for Aranda.

Anita R. Valainis, Chief Counsel, Industrial Commission of Arizona, James F. Crane, Chief Counsel, State Compensation Fund by James B. Stabler, Phoenix, Attorneys for Respondent Employer and Respondent Carrier.

James F. Crane, Chief Counsel, State Compensation Fund by Kenna Finch, Legal Department, Mark A. Kendall, Legal Department, Phoenix, Attorneys for Petitioner Employer and Carrier.

Anita Valainis, Chief Counsel, Industrial Commission of Arizona, Ely, Bettini, Ulman, Insana & Turley by J. Wayne Turley, Phoenix, Attorneys for Respondent Employee.

## OPINION

JONES, Vice Chief Justice.

¶ 1 We address two cases consolidated for review to determine the applicability of Arizona Revised Statutes Annotated (A.R.S.) § 23–1031 [1] (Supp.1999), authorizing the suspension of workers' compensation benefits to individuals convicted of a crime and incarcerated. *See Aranda v. Industrial Commission,* 195 Ariz. 403, 989 P.2d 157 (App.1999), and *RemedyTemp v. Industrial Commission,* 1 CA–IC 99–0088, IC Claim No. 98162298731. In *Aranda,* we granted review from a decision of the court of appeals, and in *Remedy Temp,* because the same issue is raised, we granted a motion to transfer the case from the court of appeals. In each, we decide whether the statute was applied retroactively, and if so, whether retroactive application is permissible as a matter of law. We have jurisdiction pursuant to article VI, section 5(3) of the Arizona Constitution. In *Aranda,* jurisdiction is further predicated on Rule 8(b), Arizona Rules for Special Action, and in *Remedy Temp,* on Rule 19(a), Arizona Rules of Civil Appellate Procedure.

### Facts and Procedural History

#### Aranda

¶ 2 Guadalupe Aranda sustained a compensable industrial injury on May 4, 1993, and the State Compensation Fund accepted his claim for benefits. In mid-February 1994, Aranda was arrested and incarcerated pending trial. He was convicted, and in March 1995, was sentenced to a period of incarceration.

¶ 3 On April 19, 1996, the Industrial Commission issued its Findings and Award for Unscheduled Permanent Partial Disability benefits. The parties stipulated to an award of $630.71 per month, which the Administrative Law Judge (ALJ) adopted. That award became final August 23, 1996.

¶ 4 In 1997, the Arizona Legislature enacted A.R.S. section 23–1031, with an effective date of December 1, 1997. On January 8, 1998, the State Compensation Fund ("State Fund") issued a Notice of Claim Status suspending benefits pursuant to section 23–1031, effective January 1, 1998. Aranda requested a hearing on the suspension. Following the hearing, the ALJ determined the State Compensation Fund "lawfully applied A.R.S. [§ 23–1031] to the facts of the present case." Aranda filed a timely request for review of the decision, which the Industrial Commission affirmed on July 29, 1998. The following day, Aranda filed a Petition for Special Action in the court of appeals, which affirmed the decision of the Industrial Commission. We granted review.

#### RemedyTemp

¶ 5 Michael Everett suffered a compensable head injury on July 21, 1991. The Industrial Commission entered its Findings and Award for Unscheduled Permanent Partial Disability benefits on January 24, 1994. The findings concluded that Everett had sustained a 43.94% loss of earning capacity, entitling him to compensation of $158.77 per month. In compliance with a child support order, one-half the compensation was paid to Everett's son.[2] Everett and his son received monthly compensation payments from 1994 into 1998.

¶ 6 Everett committed three criminal offenses in March and April 1997. Police arrested him in mid-April 1997. Everett pled guilty to three charges and was sentenced to a period of imprisonment in December 1997. The State Compensation Fund, pursuant to section 23–1031, suspended benefits payments to Everett effective May 1, 1998. The statute became effective prior to Everett's plea and sentencing but subsequent to the criminal offenses. Payments to Everett's son have continued pursuant to A.R.S. section 23–1031(B).

¶ 7 Everett requested a hearing, which was held in early 1999. The ALJ concluded

---

1. Formerly A.R.S. section 23–1028.01, enacted in 1997. *See* 1997 Laws, Ch. 212, § 4. We cite the statute by its current numbering designation.

2. Aranda also has one minor child, which was stipulated to by the parties. However, the record is silent as to a support order or whether a portion of the benefits went to the child.

that A.R.S. section 23–1031 did not apply to Everett's case because the statute expressed no intent to be applied retroactively and it embraced substantive rights. The ALJ further decided that the rights of the parties were fixed by the law which existed on the date of injury. Therefore, the ALJ set aside the suspension of benefits. The State Compensation Fund filed a Petition for Special Action in the court of appeals. Everett requested that this court review the case pursuant to Rule 19(a)(3), Arizona Rules of Civil Appellate Procedure, which provides for transfer of cases in these circumstances.

¶ 8 We granted review in *Aranda* and transfer in *RemedyTemp* to determine whether workers' compensation benefits are vested property rights and whether, as a matter of law, the lower courts correctly applied A.R.S. section 23–1031.

### DISCUSSION

#### Retroactive Application

¶ 9 The issue is one of first impression regarding the applicability of A.R.S. section 23–1031 to pre-determined, final compensation awards by the Arizona Industrial Commission. The statute reads in relevant part:

§ 23–1031. **Persons incarcerated; suspension of benefits**

A. Except as provided in subsection B of this section, beginning on December 1, 1997, payment of compensation under this chapter shall be suspended during the period of time that the employee has either:

1. Been convicted of a crime and is incarcerated in any state, federal, county or city jail or correctional facility.

2. Been adjudicated delinquent and is incarcerated in any state, federal, county or city jail or correctional facility.

The Arizona Legislature enacted the statute in 1997. *See* Act of Apr. 28, 1997, Ch. 212, § 4, 1997 Ariz. Sess. Laws 1688, 1690. The effective date of its passage would have been July 21, 1997, but the legislature chose specifically to enact the later effective date of December 1, 1997.

¶ 10 Statutes must contain an express statement of retroactive intent before retroactive application may occur. *See* A.R.S. § 1–244; *see also San Carlos Apache Tribe v. Superior Court,* 193 Ariz. 195, 205, 972

P.2d 179, 189 (1999); *Bush v. Industrial Comm'n,* 136 Ariz. 522, 524, 667 P.2d 222, 224 (1983); *Gallo v. Industrial Comm'n,* 83 Ariz. 392, 396, 322 P.2d 372, 375 (1958). Here, the Legislature inserted a later effective date into the statute than would have existed under its passage date. Section 23–1031 gives no express statement of retroactive intent.

¶ 11 This court has previously created an exception to the general rule requiring express language of retroactivity. Enactments that are procedural only, and do not alter or affect earlier established substantive rights may be applied retroactively. *See In re Shane B.,* 198 Ariz. 85, 87, 7 P.3d 94, 96 (2000); *Bouldin v. Turek,* 125 Ariz. 77, 78, 607 P.2d 954, 955 (1979). Even if a statute does not expressly provide for retroactivity, it may still be applied if merely procedural because litigants have no vested right in a given mode of procedure. *See Allen v. Fisher,* 118 Ariz. 95, 96, 574 P.2d 1314, 1315 (App.1977). We thus determine, as a threshold matter, whether A.R.S. section 23–1031 is procedural. If it is, it can be applied to suspend benefits in both cases at bench. If not, we move to the substantive issue.

¶ 12 In general, procedural law relates to the manner and means by which a right to recover is enforced or provides no more than the method by which to proceed. *See State ex rel. Miller v. Beardsley Indus. Property,* 173 Ariz. 19, 24, 839 P.2d 439, 444 (App.1992). Substantive law "creates, defines and regulates rights" while a procedural law establishes only "the method of enforcing such rights or obtaining redress." *Hall v. A.N.R. Freight Sys., Inc.,* 149 Ariz. 130, 138, 717 P.2d 434, 442 (1986) (quoting *Allen,* 118 Ariz. at 96, 574 P.2d at 1315)).

#### Procedural or Substantive

¶ 13 Several procedural statutes have been enacted in the field of workers' compensation. *See, e.g.,* A.R.S. §§ 23–908 (Supp. 1995) (requiring accident/injury reports); –1026 (1995) (compelling periodic medical exams); –1047(D) (1991) (requiring annual income reports); –1071 (1995) (requiring written Commission approval for absence from state in excess of two weeks). Each of these serves as a procedural device to facilitate the

manner and means by which benefits are administered. They do not create, define, or regulate the right to receive benefits.

¶ 14  For example, claimants receiving permanent compensation benefits must report annual income on the award's anniversary date, *see* A.R.S. § 23–1047(D), failing in which, they receive notice that the report must be filed within thirty days. After thirty days, benefits may be suspended until the report is filed. *See id.* The goal of the statute is the efficient administration of benefits. *See Pima County Bd. of Supervisors v. Industrial Comm'n,* 149 Ariz. 38, 45, 716 P.2d 407, 414 (1986).

¶ 15  In contrast, section 23–1031 functions substantively to redefine, regulate, or even eliminate a claimant's legal authorization to receive benefits based on his incarcerated status. Reinstatement of benefits would occur only by release from prison. Clearly, this is a matter of substantive law.

¶ 16  Even so, a substantive legal right may be subject to retroactive impairment before it becomes a vested right. *See Rio Rico Properties v. Santa Cruz County,* 172 Ariz. 80, 90, 834 P.2d 166, 176 (Tax 1992). But, once the right is vested, legislation may not interfere by retroactively altering the law that applies to completed events. *See San Carlos,* 193 Ariz. at 205, 972 P.2d at 189. "The conclusion that a particular legal right is substantive, in contrast to procedural, does not mean that it can never be modified or abolished by the legislature. 'The rule is that any right conferred by statute may be taken away by statute before it has become vested.'" *Hall,* 149 Ariz. at 138, 717 P.2d at 442 (quoting *In re Dos Cabezas Power Dist.,* 17 Ariz.App. 414, 418, 498 P.2d 488, 492 (1972)). The core issue before us, therefore, is whether an earlier established right is a vested right and whether the right would be affected or altered retrospectively by section 23–1031.

**Vested Rights**

¶ 17  Property has been defined as "any vested right of any value." *Rio Rico,* 172 Ariz. at 88, 834 P.2d at 174. Workers' compensation benefits based on a final workers' compensation award constitute monetary value to the recipient. Accordingly, the right to receive predetermined workers' compensation benefits is a property right. *See Madrid v. Industrial Comm'n,* 178 Ariz. 606, 610, 875 P.2d 839, 843 (App.1994); *United Riggers Erectors v. Industrial Comm'n,* 131 Ariz. 258, 262, 640 P.2d 189, 193 (App.1981) (citing *Bugh v. Bugh,* 125 Ariz. 190, 608 P.2d 329 (App.1980)).

¶ 18  A property right "vests" when every event has occurred which needs to occur to make the implementation of the right a certainty. *See Hall,* 149 Ariz. at 138, 717 P.2d at 442. A vested property right is a right which is "actually assertable as a legal cause of action or defense or is so substantially relied upon that retroactive divestiture would be manifestly unjust." *San Carlos,* 193 Ariz. at 200, 972 P.2d at 184.

¶ 19  In the instant cases, both claimants filed for workers' compensation benefits and received awards which became final prior to the enactment of section 23–1031. An award substantiates a legal obligation for payment, upon which the worker and the carrier have a right to rely. If a carrier withholds or reduces payment, the claimant may exercise an existing, legal right to enforce compliance with the award by direct action against the carrier for payment and, if relevant, bad faith. *See Hayes v. Continental Ins. Co.,* 178 Ariz. 264, 275, 872 P.2d 668, 679 (1994).

¶ 20  Where every necessary event has occurred making implementation of the right a certainty, then the right to receive a workers' compensation benefit constitutes a substantive vested property right. This means that when final, the award creates an immediate right to present enjoyment of benefits in the current month, as well as future enjoyment in subsequent months. Such rights are neither contingent nor merely expectant.

¶ 21  *Steinfeld v. Nielsen* defined vested rights as those that are neither contingent nor expectant:

'Rights are vested, in contradistinction to being expectant or contingent. They are vested, when the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest. They are expectant, when they depend upon the continued existence of the present condition of things

until the happening of some future event. They are contingent, when they are only to come into existence on an event or condition which may not happen or be performed until some other event may prevent their vesting.'

15 Ariz. 424, 465, 139 P. 879, 895 (1913) (quoting *Pearsall v. Great N. Ry.*, 161 U.S. 646, 673, 16 S.Ct. 705, 713, 40 L.Ed. 838 (1896)). Here, the award leaves nothing to contingency or to some future event.

¶ 22   In the instant cases, it may be said that vesting occurs, at the latest, upon finalization of the award. *See Pima County Bd.*, 149 Ariz. at 43, 716 P.2d at 412 ("After findings and an award are made, the doctrine of *res judicata* operates to bar relitigation of issues which were or could have been decided at that proceeding."). Aranda's award became final August 23, 1996, and Everett's became final January 24, 1994. Section 23–1031 did not become effective until December 1, 1997.

¶ 23   The State Fund asserts that A.R.S. section 23–1031 merely rearranges benefits, thereby making the right contingent or expectant, rather than vested. However, in *Gallo*, dealing with the Commission's authority to reduce benefits after a final award of permanent partial disability, this court determined that the 1953 amendment to A.R.S. section 56–957 (now A.R.S. section 23–1044(F)) could not be retroactively applied because "the amendment affects vested rights and is substantive legislation." *Gallo*, 83 Ariz. at 396, 322 P.2d at 375. Thus, at least as far back as 1958, this court has viewed permanent partial disability benefits as vested rights and limited "the jurisdiction of the Commission to alter, amend, or rescind awards for unscheduled permanent partial disabilities" to its authority under the statutes existing at the time of injury and award. *Id.*

■   ¶ 24   We stated in *Tower Plaza Inv. Ltd. v. DeWitt*, 109 Ariz. 248, 508 P.2d 324 (1973), that "a statute is not retroactive in application simply because it may relate to antecedent facts." *Tower*, 109 Ariz. at 250, 508 P.2d at 326; *see also Hall*, 149 Ariz. at 139, 717 P.2d at 443. In *Tower*, the petitioners were owners of real property who had entered into written leases. After the leasing contracts were complete, the Arizona Legislature passed a tax statute which acted as an excise tax on the privilege of doing business as a lessor. The court further specified that the statute at issue was not a property tax, but rather an excise tax, and held the lease to be an antecedent fact. In the instant cases, the State Fund contends that *Tower* supports the proposition that the injury and award are mere antecedent facts and that the statute does no more than relate to those facts, but does not regulate them. We disagree because, in *Tower*, the statute functioned prospectively to tax income after the effective date because the receipt of rentals was the taxable event, not the signing of the lease contract.

¶ 25   The State Fund's analogy to *Tower* fails for two additional reasons. First, taxation of income differs in both kind and purpose from a suspension of workers' compensation benefits. Second, a claimant's injury and workers' compensation award are not mere antecedent facts to which the statute "relates" but are the operative events which result in vesting the award. *Tower* is inapposite. Vested workers' compensation benefits constitute property.

¶ 26   The parties also cite cases from other jurisdictions that have decided this issue in different ways. *See, e.g., State ex rel. Brown v. Industrial Comm'n*, 68 Ohio St.3d 45, 623 N.E.2d 55 (1993) (holding claimant's entitlement to be substantive right measured by statutes in force on date of injury and subsequent statute regulating benefits payable during incarceration deemed inapplicable); *Miles v. F.D. Shay Contractor, Inc.*, 626 So.2d 74, 77–78 (La.Ct.App.1993) (holding statute suspending benefits during incarceration inapplicable because statute not in effect on date of injury); *but cf. In re Connolly's Case*, 418 Mass. 848, 642 N.E.2d 296 (1994) (holding workers' compensation statute terminating benefits if claimant is incarcerated to be procedural); Though we find these cases informative, Arizona law fully supports our decision. Nothing in our statutes or judicial decisions suggests that a vested property right, embodied in a final workers' compensation award, may be suspended by subsequent legislative enactment.

¶ 27   In sum, the final Industrial Commission Award created a vested right in the

claimants to receive the monthly disability benefits due as a result of lost earning capacity. Both the Aranda and Everett awards were final prior to the effective date of A.R.S. section 23–1031. Claimants possessed an existing, enforceable right, in property, to receive the monthly compensation payments prior to the effective date of the statute. Therefore, the substantive property right in workers' compensation payments vested once the Industrial Commission's Findings and Award became final.

¶ 28 The Legislature "may certainly enact laws that apply to rights vested before the date of the statute. Such laws, however, may only change the legal consequences of *future* events." *San Carlos,* 193 Ariz. at 205, 972 P.2d at 189. But we are not dealing here with future events. The claimants must have the opportunity to avert the loss of benefits. The last moment this would be possible, in the context of conviction and incarceration, is the date of the criminal offense. That is the last moment that claimants may choose to alter their behavior to avoid the application of section 23–1031. Section 23–1031, thus, cannot be applied to Aranda and Everett whose awards were final and whose offenses were committed prior to the effective date of the statute.[3] On the record before us, we need not address the prospective application of the statute, nor any constitutional claims arising therefrom.

### CONCLUSION

¶ 29 Section 23–1031 may not be applied in the instant cases. We therefore vacate the appellate opinion in *Aranda* and reverse the Commission's findings and award applying section 23–1031 to him. We affirm the Commission's findings and award which refused to apply section 23–1031 to Everett. We note that the date of the final award should control the vesting of claimant's rights under the statute in question, not the date of the injury.

¶ 30 We remand for further proceedings consistent with this opinion.

3. We specifically do not decide the related issue whether section 23–1031 would apply to a claimant whose award is final prior to the statute's effective date but whose criminal act is committed subsequently. We note simply the distinction

CONCURRING: THOMAS A. ZLAKET, Chief Justice, STANLEY G. FELDMAN, Justice, FREDERICK J. MARTONE, Justice, and RUTH V. McGREGOR, Justice.

that in such case, the act triggering the suspension statute is the voluntary act of the claimant with knowledge that his crime may result in a loss of benefits.