IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | 2 CA-CR 2008-0037 |
| Appellee, | ) | DEPARTMENT A |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| ALVIN EDWARD WILLIAMS, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-66466

Honorable Carmine Cornelio, Judge

AFFIRMED

Terry Goddard, Arizona Attorney General
  By Kent E. Cattani and Kathryn A. Damstra                                    Tucson
                                                                       Attorneys for Appellee

Isabel G. Garcia, Pima County Legal Defender
  By Robb P. Holmes                                                             Tucson
                                                                       Attorneys for Appellant

P E L A N D E R, Chief Judge.

¶1        In this appeal from a natural life sentence imposed after a first-degree murder

conviction, appellant Alvin Edward Williams argues that the trial court erred in not making

findings on the existence and balancing of aggravating and mitigating circumstances and that its failure to do so violated his state constitutional right to appeal. Finding no error, we affirm.

**Background**

¶2        In October 2000, a jury found Williams guilty of a first-degree murder committed in June 1999. The trial court sentenced him to natural life in prison in May 2001. On appeal, this court affirmed Williams's conviction and sentence. *State v. Williams*, No. 2 CA-CR 2001-0195 (memorandum decision filed Nov. 29, 2004). Thereafter, relying on *State v. Viramontes*, 204 Ariz. 360, 64 P.3d 188 (2003), Williams successfully petitioned for post-conviction relief pursuant to Rule 32, Ariz. R. Crim. P., and received a resentencing hearing. In January 2008, after reviewing the record from the original sentencing proceeding and holding a new aggravation and mitigation hearing, the trial court again imposed a natural life sentence. This appeal followed.

**Discussion**

¶3        At both the time Williams committed the murder and when he was first sentenced, the Arizona statutes applicable to non-capital, first-degree murder convictions permitted a trial court, in its sole discretion, to impose a sentence of life with the possibility of release after a specified period (life) or life with no possibility of eventual release (natural life). *See* A.R.S. § 13-703(A); 1993 Ariz. Sess. Laws, ch. 153, § 1; 1999 Ariz. Sess. Laws, ch. 104, § 1. In addition, the law at that time required a trial court to return "a special verdict setting forth its findings as to the existence or nonexistence" of any aggravating or mitigating

2

circumstances. *See* former A.R.S. § 13-703(D); 1993 Ariz. Sess. Laws, ch. 153, § 1; 1999 Ariz. Sess. Laws, ch. 104, § 1. In 2002, the legislature amended § 13-703 and deleted that requirement. *See* 2002 Ariz. Sess. Laws 5th Spec. Sess., ch. 1, § 1.

¶4 In 2003, our supreme court held in *Viramontes* that the aggravating sentencing factors set forth in § 13-703, rather than those listed in A.R.S. § 13-702, apply to all first-degree murder cases, not only to capital cases. 204 Ariz. 360, ¶¶ 10, 13, 64 P.3d at 190. Shortly thereafter, the legislature enacted § 13-703.01(Q),[1] thereby "restrict[ing] the application of the holding in *Viramontes* to those cases arising before the effective date of the new statute." *State v. Fell*, 210 Ariz. 554, ¶ 27, 115 P.3d 594, 601 (2005); *see also* 2003 Ariz. Sess. Laws, ch. 255, § 2. And, as noted above, the sentencing statutes in effect at the time of Williams's resentencing did not require a trial court to return a special verdict, that requirement in former § 13-703(D) having been eliminated in 2002, before *Viramontes* was decided. *See* 2002 Ariz. Sess. Laws 5th Spec. Sess., ch. 1, § 1.

¶5 In resentencing Williams to a natural life term, the trial court considered only the aggravating factors set forth in § 13-703(F), in compliance with *Viramontes* and *Fell*. *See Fell*, 210 Ariz. 554, ¶ 23, 115 P.3d at 600 (because legislature's post-*Viramontes* enactment of § 13-703.01(Q)(2) was "plainly a substantive change in the law," trial court could consider only the aggravators specified in law in effect at time defendant committed

---

[1]That subsection provides in part that, "[i]n determining whether to impose a sentence of life or natural life [in a noncapital case], the [trial] court . . . [s]hall consider the aggravating and mitigating circumstances listed in § 13-702 and any statement made by a victim." § 13-703.01(Q)(2).

his crime, § 13-703(F), "in making the choice between a life and natural life sentence" ). The trial court, however, did not make any specific findings on aggravating or mitigating factors and did not return a special verdict explaining the natural life sentence it imposed.

¶6        Our supreme court ruled in *Fell* that neither before nor after the legislature amended the statutes in 2003 was a trial court required to make any specific finding before imposing a natural life sentence. 210 Ariz. 554, ¶¶ 12, 14, 115 P.3d at 598. Thus, as Williams acknowledges, the trial court's failure to make any specific findings was permissible under *Fell*.[2] *See id.* ¶ 17 ("[T]he statute does not require [the trial court to make] any specific factual finding before a defendant is statutorily eligible for a natural life term."). Nonetheless, Williams argues the court's failure to make findings to support the natural life sentence violated his state constitutional right to appeal provided in article II, § 24 of the Arizona Constitution. According to Williams, that provision obligates a trial court to "state its reasons for imposing" a natural life sentence because, otherwise, an appellate court would "be left to guess what the trial court's reasons were for imposing the sentence." If a trial court fails to state its reasons for imposing a natural life sentence, Williams asserts, "the defendant loses his right to appeal for all practical purposes."

---

[2]Williams acknowledged during his resentencing proceedings, and concedes on appeal, that the supreme court in *Fell* already "had ruled on the . . . issues [he raised below] contrary to his position." To the extent Williams now argues "*Fell* was wrongly decided," we are bound by and have no authority to disregard or overrule that decision, which in any event affirmed this court's opinion in that case. *See Fell*, 210 Ariz. 554, ¶ 28, 115 P.3d at 601, *affirming State v. Fell*, 209 Ariz. 77, 97 P.3d 902 (App. 2004); *see also State v. Miranda*, 198 Ariz. 426, ¶ 13, 10 P.3d 1213, 1216 (App. 2000).

4

¶7       As the state correctly points out, Williams made no argument below based on his state constitutional right to appeal.  In his reply brief, Williams counters he preserved the issue by "mov[ing] to have the court make findings in support of his sentence."  In his sentencing memoranda below, however, Williams primarily argued the trial court was "precluded from imposing the 'natural life' sentence" because the state had not disclosed any alleged aggravating circumstances or other information for the court to consider in rendering sentence and because the resentencing judge "did not hear the trial of this matter."  Although Williams also asserted "the court should be required at the time of rendering its sentence to state which factors it has found and its reasons for weighing them as it does in rendering the sentence," he did not specify any constitutional right requiring the trial court to make specific findings.

¶8       By failing to assert any constitutional claim below or object on constitutional grounds to the trial court's failure to make specific findings, Williams "forfeit[ed] the right to obtain appellate relief unless [he] prove[s] that fundamental error occurred."  *State v. Martinez*, 210 Ariz. 578, n.2, 115 P.3d 618, 620 n.2 (2005); *see also State v. Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d 601, 607 (2005) ("Fundamental error review . . . applies when a defendant fails to object to alleged trial error."); *State v. Bolton*, 182 Ariz. 290, 297, 896 P.2d 830, 837 (1995) ("waiver principle applies to alleged constitutional issues, as well as to nonconstitutional issues"); *State v. Holder*, 155 Ariz. 83, 85, 745 P.2d 141, 143 (1987) (doctrine of waiver "applies to constitutional error"); *State v. Molina*, 211 Ariz. 130, ¶ 15, 118 P.3d 1094, 1098 (App. 2005) (fundamental error review applies to alleged sentencing

5

error based on grounds not urged in trial court). Fundamental error is "'error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial.'" *Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d at 607, *quoting State v. Hunter*, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984).

¶9        As the appellant, Williams bears "the burden of persuasion in fundamental error review" and "must first prove error." *Id*. ¶¶ 19, 23; *see also State v. Lavers*, 168 Ariz. 376, 385, 814 P.2d 333, 342 (1991). And, assuming any error is established, "[i]n order to obtain reversal based on unobjected-to trial error, a defendant must show 'both that fundamental error exists and that the error in [his or her] case caused . . . prejudice.'" *State v. Ruggiero*, 211 Ariz. 262, ¶ 25, 120 P.3d 690, 696 (App. 2005), *quoting Henderson*, 210 Ariz. 561, ¶ 20, 115 P.3d at 607 (alteration in *Ruggiero*). "'Trial judges are presumed to know the law and to apply it in making their decisions.'" *State v. Trostle*, 191 Ariz. 4, 22, 951 P.2d 869, 887 (1997), *quoting Walton v. Arizona*, 497 U.S. 639, 653 (1990). Williams has shown nothing to rebut that presumption. Nor does the record suggest that the trial court considered any aggravating factors other than those set forth in § 13-703 or otherwise abused its discretion in imposing the natural life sentence. *See State v. Sproule*, 188 Ariz. 439, 440, 937 P.2d 361, 362 (App. 1996) (natural life sentence reviewed for abuse of discretion). In short, Williams has established neither error, fundamental or otherwise, nor prejudice.

¶10       Moreover, Williams "has not argued, much less carried his burden to establish, fundamental error" in connection with his state constitutional claim. *State v. Ramsey*, 211

6

Ariz. 529, n.6, 124 P.3d 756, 766 n.6 (App. 2005). Accordingly, we consider this argument waived and do not address it further. *See id.*; *see also State v. Carver*, 160 Ariz. 167, 175, 771 P.2d 1382, 1390 (1989); *State v. Cons*, 208 Ariz. 409, ¶ 3, 94 P.3d 609, 611 (App. 2004); Ariz. R. Crim. P. 31.13(c)(1)(vi).[3]

**¶11**       Williams next contends the trial court "was required to make sentencing findings in a special verdict form" when it resentenced him in 2008, because the law in effect when Williams committed his offense in 1999 included that requirement. *See* former § 13-703(D); 1993 Ariz. Sess. Laws, ch. 153, § 1.[4] As noted earlier, when the legislature amended the statute in 2002, it deleted any requirement that a trial court return a special verdict in imposing a life or natural life sentence in a noncapital first-degree murder case. 2002 Ariz. Sess. Laws 5th Spec. Sess., ch. 1, § 1. But according to Williams, and *Fell* notwithstanding,

---

[3]Because Williams did not preserve below or properly argue on appeal his state constitutional claim, we do not address its merits. But even if a trial court has no statutory or constitutional obligation to cite the factors on which a natural life sentence is based, our supreme court has stated: "While an abuse of discretion [in sentencing] will, as a practical matter, rarely be found, the trial court's explanation of its reasoning serves to facilitate such review, and is thus never a useless exercise." *Fell*, 210 Ariz. 554, n.7, 115 P.3d at 600 n.7; *cf. State v. Harrison*, 195 Ariz. 1, ¶ 12, 985 P.2d 486, 489 (1999) (to comply with requirements of § 13-702(B), trial court must "articulat[e] at sentencing the factors the judge considered to be aggravating or mitigating and explain[] how these factors led to the sentence[] imposed"; "[a]nything less would force the appellate courts—as well as the victim, the defendant, and the public—to speculate or infer").

[4]Williams did not expressly request a special verdict below, argue that it was required, or cite former § 13-703(D) to support any such alleged requirement. But he did argue in his sentencing memorandum that "the court should be required at the time of rendering its sentence to state which factors it has found and its reasons for weighing them as it does in rendering the sentence." In our view, that assertion below adequately preserved the issue for appeal; and the state does not argue otherwise.

the sentencing statute in effect in 1999 governs and "required [the trial court] to make findings as part of its sentencing procedure." We review de novo issues involving interpretation, application, and retroactivity of statutes. *See City of Tucson v. Whiteco Metrocom, Inc.*, 194 Ariz. 390, ¶ 8, 893 P.2d 759, 762 (App. 1999); *State v. Jensen*, 193 Ariz. 105, ¶ 16, 970 P.2d 937, 939 (App. 1998).

**¶12**         In *Fell*, our supreme court concluded that, "[b]ecause the new statute [§ 13-703.01(Q)] . . . allows the imposition of a sentence on the basis of factors that the prior law excluded from consideration, it is plainly a substantive change in the law." 210 Ariz. 554, ¶ 23, 115 P.3d at 600. That conclusion, however, was limited to the question of "what factors the judge may consider in exercising his discretion to sentence a defendant to either life or natural life." *Id.* ¶ 20. The court in *Fell* discussed the purpose and benefits of a special verdict, which "explain[ed] the judge's reasons for imposing the sentence" and "served to ensure that inappropriate factors were not considered when the trial court exercised its sentencing discretion." *Id.* ¶¶ 17, 18. But the court made clear that neither the sentencing statutes nor *Viramontes* requires a trial court to "find any specific aggravating factor to impose a natural life sentence." *Id.* ¶ 17. And the court did not address at all, let alone characterize as "a substantive change in the law," *id.* ¶ 23, the legislature's elimination in 2002 of the special verdict requirement. Therefore, we do not agree with Williams's broad suggestion that the court in *Fell* viewed that statutory change as "substantive, not procedural."

8

**¶13** In short, neither *Viramontes* nor *Fell* addressed the issue raised here: whether former § 13-703(D)'s requirement of a special verdict, in effect at the time of Williams's offense, created a vested, substantive right that could not be retroactively altered by the 2002 statutory change. A criminal defendant must be punished according to the substantive penalty that existed at the time the offense was committed. *See* A.R.S. § 1-246; *O'Brien v. Escher*, 204 Ariz. 459, ¶ 9, 65 P.3d 107, 110 (App. 2003). Again, however, the trial court adhered to that principle and to *Fell*'s holding by resentencing Williams solely pursuant to the factors set forth in § 13-703(F), notwithstanding the 2003 change in the law embodied in § 13-703.01(Q)(2). The related issues posed here, then, are whether the legislature's removal of the special verdict requirement in 2002 constituted a substantive legal change and whether the trial court's compliance with current law constituted an impermissible, retroactive application of the amended statute to Williams's resentencing proceeding.

**¶14** "[A] criminal statute is generally deemed substantive if it '"defines a crime or involves the length or type of punishment."'" *State v. Aguilar*, 218 Ariz. 25, ¶ 26, 178 P.3d 497, 504 (App. 2008), *quoting In re Shane B.*, 198 Ariz. 85, ¶ 9, 7 P.3d 94, 97 (2000), *quoting Lamb v. Kan. Parole Bd.*, 812 P.2d 761, 764 (Kan. App. 1991). The special verdict requirement prescribed in former § 13-703(D) does not fit in that category, "in that it does not alter the elements of an offense, redefine a crime or substantive defense in some other manner, reallocate burdens of proof, or otherwise affect a substantive right such as the length or type of punishment that might be imposed for prior conduct." *Aguilar*, 218 Ariz. 25, ¶ 26, 178 P.3d at 504.

9

¶15 Because the legislative removal of the special verdict requirement constitutes a procedural, not substantive, change in the law, it was properly applied to Williams's resentencing without violating retroactivity principles. And that is so, even though the legislature did not "expressly declare[] that [the 2002 amendments to § 13-703 or the 2003 enactment of] § 13-703.01(Q) [are] to be retroactively applied." *Fell*, 210 Ariz. 554, ¶ 21, 115 P.3d at 600; *see also* A.R.S. § 1-244 ("No statute is retroactive unless expressly declared therein."). As the court stated in *Fell*:

> "Enactments that are procedural only, and do not alter or affect earlier established substantive rights may be applied retroactively. Even if a statute does not expressly provide for retroactivity, it may still be applied if merely procedural because litigants have no vested right in a given mode of procedure."

210 Ariz. 554, ¶ 22, 115 P.3d at 600, *quoting Aranda v. Indus. Comm'n*, 198 Ariz. 467, ¶ 11, 11 P.3d 1006, 1009 (2000); *see also City of Tucson v. Clear Channel Outdoor, Inc.*, 209 Ariz. 544, ¶ 11, 105 P.3d 1163, 1166-67 (2005); *Aguilar*, 218 Ariz. 25, ¶¶ 25-27, 178 P.3d at 504.

¶16 Citing *State v. Murray*, 194 Ariz. 373, 982 P.2d 1287 (1999), however, Williams argues "[p]arole eligibility is a substantive right and it is implicated in the sentencing procedure that is applied." But *Murray* is distinguishable and inapposite to the issue presented here. There, our supreme court held that the legislature could not "retrospectively overrule" *State v. Tarango*, 185 Ariz. 208, 914 P.2d 1300 (1996). *Murray*, 194 Ariz. 373, ¶ 5, 982 P.2d at 1288; *see also id.* ¶ 9. Therefore, the court ruled, "the parole eligibility restrictions of A.R.S. §§ 13-604 and 13-604.02, as amended in 1997, could [not]

10

be retroactively applied to [the defendant,] a prisoner sentenced before the amendments were adopted." *Murray*, 194 Ariz. 373, ¶¶ 1, 10, 982 P.2d at 1287, 1289.

¶17      In so ruling, the court in *Murray* stated that, "[p]arole eligibility on sentencing is, of course, a substantive right rather than a procedural matter" and that the legislature "'may not disturb vested substantive rights by retroactively changing the law that applies to completed events.'" *Id.* ¶ 6, *quoting San Carlos Apache Tribe v. Superior Court*, 193 Ariz. 195, 205, 972 P.2d 179, 189 (1999). In this case, however, Williams had no substantive right to parole eligibility when he committed the crime, was originally sentenced, or was later resentenced. At all relevant times, Arizona law has allowed a trial court, in its sole discretion, to impose a natural life term on noncapital, first-degree murder convictions. In addition, unlike *Murray*, this case does not involve any legislative attempt to retroactively "overrule and change" Arizona Supreme Court authority regarding the necessity of special verdicts in such sentencing proceedings. *Id.* ¶ 9. Nor does *Murray* support Williams's apparent contention that, at the time of his resentencing, he had a vested, substantive right to a special verdict, as prescribed in former § 13-703(D).

¶18      In sum, the 2002 legislative removal of the special verdict requirement "d[id] not alter or affect earlier established substantive rights," *Aranda*, 198 Ariz. 467, ¶ 11, 11 P.3d at 1009, but rather "constitute[d] a procedural change in the law and, as such, does not raise retroactivity concerns." *Aguilar*, 218 Ariz. 25, ¶ 27, 178 P.3d at 504. Even assuming the trial court's failure to return a special verdict pursuant to former § 13-703(D) constituted a retroactive application of the new statute to Williams's resentencing, it was not

11

impermissible. Accordingly, the trial court did not err in failing to return a special verdict to explain its imposition of the natural life sentence.

**Disposition**

**¶19**    The trial court's resentencing order is affirmed.


_____
JOHN PELANDER, Chief Judge

CONCURRING:


_____
JOSEPH W. HOWARD, Presiding Judge


_____
J. WILLIAM BRAMMER, JR., Judge